No. 910 December 18, 2024 857

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Randall HECKER,
*Plaintiff-Respondent,*
*v.*
Kimberly FELLA,
*Defendant-Appellant.*

Josephine County Circuit Court
19CVC40405F, 19CVC40405; A179677 (Control), A178586

Randall HECKER,
*Plaintiff-Respondent,*
*v.*
Kimberly FELLA
and Israel Wytcherley,
*Defendants-Appellants.*

Josephine County Circuit Court
19CV40405; A177258

Pat Wolke, Judge.

Argued and submitted December 13, 2023.

Steve Elzinga argued the cause and filed the briefs for appellants.

Max C. Whittington argued the cause for respondent. Also on the brief was Cauble & Whittington, LLP.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Leith, Senior Judge.*

LEITH, S. J.

In Case No. 19CV40405F, vacated and remanded; otherwise affirmed.

_____

\* Leith, S. J., *vice* Jacquot, J.

## LEITH, S. J.

In these consolidated appeals, defendants Kimberly Fella and Israel Wytcherley appeal various judgments. Taken together, the appeals challenge: (1) the general judgment in the underlying civil litigation; (2) the first post-trial contempt judgment; (3) the third post-trial contempt judgment; and (4) a judgment sanctioning defendants' discovery violations.[1] We affirm each of those judgments, with the exception of the third contempt judgment which we vacate and remand for further proceedings.

### GENERAL JUDGMENT

We first address defendants' assignments of error related to the underlying general judgment. We provide the relevant background facts here and set out additional facts as necessary in our discussion of each assignment of error.

This is a dispute over storm water drainage. Plaintiff and defendants own adjacent properties in Grants Pass. The properties are separated by a private road, Summer Lane, which runs south from a public highway, Lower River Road. Plaintiff's property lies east of Summer Lane (Summer Lane is, in fact, an easement on plaintiff's land). Defendants' property lies to the west of Summer Lane. The properties were once part of a single parcel.

Plaintiff's property has two drainage features with relevance to this case. First, a drainage pipe runs roughly 900 feet along the east side of Summer Lane from a catch basin on Lower River Road. Storm water from the road and from various properties—including the northern part of plaintiff's property—gathers in the catch basin, then is carried by the pipe to a low spot on the western edge of plaintiff's land. When plaintiff's property was partitioned from a larger parcel in 1962, the grantor reserved an express easement for that drainage pipe. The property was still subject to that easement when plaintiff purchased it in 2000, and it remains so today. The pipe was replaced in 2007 with a new pipe of the same size.

---

[1] The predicates for, and the substance of, each of those judgments will be described as appropriate throughout the rest of the opinion.

Second, below the mouth of the 900-foot pipe, a culvert carries water from plaintiff's property, under Summer Lane, into a swale on defendants' property. That water includes flows from upland fields, as well as drainage from the 900-foot pipe. The culvert has been present at that location since at least 1994 (and probably since 1962). Plaintiff replaced the culvert with a new one of the same size in 2008.

Plaintiff's property is bordered to the north by Lower River Road and is bisected on a generally east-west slant by an irrigation ditch. Plaintiff has built a home north of the ditch. The southern portion of the property remains largely fields and contains a barn. South of the ditch, plaintiff's property drains naturally toward the low swale on defendants' property. While the evidence was in conflict as to the natural flow from the north part of plaintiff's property, there was evidence that the north part also would drain to defendants' swale, at least if it were not interrupted by the irrigation ditch.

Defendants purchased their property west of Summer Lane in 2018. Defendants did not believe they should have to accept drainage through the culvert onto their property. In the spring of 2019, they plugged the culvert with dirt, gravel, and other materials. The blockage caused water to back up onto plaintiff's field. Plaintiff confronted defendants about that, and defendant Fella confirmed the blockage, explaining, "Yep, you can't drain water on our property." This case ensued.

Plaintiff sought damages and an injunction based on defendants' alleged nuisance in blocking the culvert. Plaintiff also claimed a prescriptive easement for drainage through the culvert. Defendants denied that there was a prescriptive easement and denied that blocking the culvert was a nuisance. They counterclaimed that the culvert was both a trespass and a private nuisance, at least in part because the culvert allegedly was installed without a required permit. They sought damages on their counterclaims.

Plaintiff was represented by counsel throughout the proceedings. Defendants were represented by two different attorneys before trial, but they appeared *pro se* for

the two-day trial. The claims for damages were tried to a jury, while the trial court sat as trier-of-fact on the claim for injunction.

The jury found that defendants' blockage of the culvert was a nuisance but awarded plaintiff no damages. The jury found against defendants on their counterclaims. The trial court "endorse[d] the jury's finding that, by blocking the culvert, defendants have created a nuisance" and also found on its "own accord, the defendants have created a nuisance by blocking the culvert." On the nuisance issue, the letter opinion concluded, "Therefore, the Court will enjoin the continued blockage [and] require that *** defendants immediately remove all impediments to the free flow of water through the culvert." The court also found that plaintiff had established by clear and convincing evidence a prescriptive easement to drain water onto defendants' property and to keep the ends of the culvert free of blockage. On defendants' claim that the culvert was itself a private nuisance because it lacks a permit, the court found that no permit was required. The court entered judgment, including an injunction, consistent with its letter opinion. The judgment ordered defendants to immediately remove all impediments to the free flow of water. In a separate paragraph, the judgment further ordered defendants to refrain from interfering with the "natural drainage of normal flood water *** via the prescriptive easement."

Defendants' second, third, and fourth assignments of error challenge that judgment. We address those in turn.

In their second assignment of error, defendants contend that the trial court erred by entering a judgment that declares a prescriptive easement but that fails to specify the part of the servient estate burdened by that easement. They also maintain the evidence was insufficient to establish the part of their property subject to the prescriptive easement. In other words, the issue is whether the evidence and judgment adequately specify the area that may be flooded by water draining through the culvert, not whether the location of the culvert itself is adequately proven or described in the judgment.

Defendants argue that they preserved the assignment of error in their closing argument. The trial court

explained to the parties that closing argument would be bifurcated. The jury would hear closing argument on the claims of nuisance only. The court directed the parties to defer their argument on the prescriptive easement until the second part of the argument, outside the jury's presence.

Nevertheless, in support of preservation of the second assignment of error (challenging only the prescriptive easement), defendants rely in part on argument to the jury, ostensibly on the issue of nuisance. In closing argument, defendant Fella argued to the jury that plaintiff failed to present any expert engineers and that the testimony from plaintiff's witnesses as to the size of the culvert was very much in conflict. Fella continued, "There's so many contradictions around where the water is, where it should be, and in my mind, water engineers should be the final say and there were none brought here." Fella then criticized the lack of aerial photographic evidence in plaintiff's case. She went on to assert the drainage system was plaintiff's own creation, so that any problems arising from it were of his own creation.

When the jury retired to deliberate, Fella argued to the court on the issue of prescriptive easement that the property ownership in the vicinity of Summer Lane

> "has long been a problem, it is still a problem, and I fear even after this case, there's still not going to be any clear and concise property lines, ownership. It's convoluted for the title companies. It's convoluted for us. I don't think that anything has been clear and concise, which is required to obtain an easement."

Finally, Fella argued that "there's nothing in any easements anywhere that speak of access to my property. There's nothing that says anything about east to west nowhere, that has not been proven, that has not been clear, that has not been concise. All we have heard is conflicting testimony."

In assessing preservation of error in this case, we are mindful that defendants were unrepresented throughout trial. Still, however, the argument below must fairly apprise the trial court of the objection or contention that is advanced on appeal. Nothing in defendants' argument reasonably apprised the court of defendants' position on

appeal—*i.e.,* that the specific land subject to seasonal flooding under the claimed prescriptive easement needed to be identified in the judgment. Similarly, nothing apprised the court that defendants believed plaintiff had critically failed to present evidence of the specific extent of the historical burden on defendants' property.

Rather, defendants' argument is fairly understood to question the persuasiveness of plaintiff's allegedly conflicting evidence, to raise the issue whether expert testimony and aerial photographic evidence should be expected or required, and to complain that various matters are convoluted, contradictory, and confusing, as opposed to concise and clear. There is no suggestion, however, that the judgment or the evidence must specifically identify the burdened land, whether by metes and bounds, elevations, natural descriptors, or some other means. The purposes of preservation were not served by defendants' argument. *See Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008) (explaining that the purposes of preservation include giving "a trial court the chance to consider and rule on a contention," further "ensur[ing] fairness to an opposing party," and "foster[ing] full development of the record").

Defendants request, in the alternative, that we exercise discretionary review under the plain-error doctrine. To constitute plain error, several requirements must be met: (1) It must be an error of law; (2) it must be "apparent," meaning the legal point is obvious and not reasonably in dispute; and (3) it must appear "on the face of the record." *State v. Reynolds*, 250 Or App 516, 519-20, 280 P3d 1046, *rev den*, 352 Or 666 (2012). Even where those conditions are satisfied, we must determine whether to exercise our discretion to reach the error and correct it. *Id.* Among the considerations relevant to that determination are

> "'the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way * * *.'"

*Id.* at 521 (quoting *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991) (alteration in *Reynolds*)).

Defendants argue the law unambiguously demands that any prescriptive easement identify the burdened land with specificity. They contend that entering a judgment without such a description constitutes plain error, relying primarily on *Arrien v. Levenger*, 263 Or 363, 502 P2d 573 (1972).

There, the defendant's predecessor in ownership had erected a dam, impounding water that rose in most years to cause seasonal flooding on the plaintiff's land. The plaintiff alleged the flooding constituted a trespass; the defendant asserted a prescriptive easement as an affirmative defense. The trial court rejected the defense of prescriptive easement and granted the plaintiff relief on the claim for trespass. The defendant appealed.

The Oregon Supreme Court first addressed the plaintiff's contention that there was inadequate proof of the precise land to be encumbered by the claimed easement. The evidence had established that seasonal flooding behind the impoundment reached onto the plaintiff's land in about four out of every five years. In wet years, the flooding would reach the "97.5 contour line." *Id.* at 367. The court held the proof was sufficient to meet the applicable definiteness requirement. *Id.*

Under *Arrien*, it may be settled law—and it is unsurprising—that when a party claims a prescriptive right to dam the natural flow of water and thereby inundate a neighboring property, the party making such a claim must prove with specificity the land historically inundated. It is less obvious that an easement simply to allow storm water drainage must be subject to a similar requirement. So far as the briefs disclose, Oregon has no case on that point.

Further, the court and jury found defendants' obstruction of the drainage culvert constituted a private nuisance, and the court's judgment enjoining further obstruction of the culvert was based in part on that unchallenged portion of the judgment. Thus, even if we exercised our discretion to review and potentially reverse the judgment

granting a prescriptive easement, defendants still would be enjoined against limiting the storm drainage through the culvert onto their land. Given those circumstances, we decline to engage in plain-error review.

In their third assignment of error, defendants contend that, because the culvert lacks a required permit and constitutes a public nuisance, the trial court erred in granting the prescriptive easement. We understand defendants to challenge the sufficiency of the evidence to support the court's determinations that no permit was required and that the culvert was not a public nuisance. When reviewing a "trial court's decision to grant a prescriptive easement we uphold the court's express and implied findings of fact if there is any evidence in the record to support them." *Hisey v. Patrick*, 309 Or App 625, 627, 484 P3d 377, *rev den*, 368 Or 347 (2021) (so explaining after a trial on a prescriptive easement claim). The evidence at trial, including the testimony of responsible county officials, overwhelmingly supported plaintiff's position that no permit was required for the culvert or for the maintenance recently performed on it. The evidence at trial does not otherwise support defendants' position that the culvert presents a public nuisance. The trial court did not err.

Defendants' fourth assignment of error maintains that plaintiff failed to join other necessary parties in the action. Defendants argue that neighbors further downstream should have been joined, because they will also bear the brunt of the prescriptive easement as water flows through defendants' property and onto theirs. Defendants also argue that plaintiff's property is titled in the name of plaintiff's trust, so that the trust should have been joined as a party.

Plaintiff maintains that those issues were not properly preserved in the trial court and that any impact on downstream property owners is speculative.

Defendants contend the argument was preserved by their Amended Answer to the Second Amended Complaint, where they asserted an affirmative defense of "Failure to Join An Indispensable Party." Under that heading, they

alleged, "Plaintiff has failed to join indispensable parties including parties with an interest in the real properties at issue as alleged in plaintiff's complaint." Defendants made no motion or further elaboration on that affirmative defense in the trial court.

Preservation of error requires a party to apprise the trial court of the issue presented on appeal. Nothing in defendants' *pro forma* pleading of the affirmative defense apprised the trial court of the issues now raised on appeal. The pleading makes no reference to potential effects on downstream property owners or to the titling of plaintiff's property. To fairly raise either of those issues, more needed to be said, whether by pleading, motion, or otherwise.

Defendants argue, in any event, that failure to join a necessary party is a jurisdictional issue that can be raised at any time, including for the first time on appeal. That is not so. Failure to join a necessary party under ORCP 29 may be raised by pleading, motion, or at trial. ORCP 21G(3). The issue may not, however, be raised for the first time on appeal. *Smith v. Truck Insurance Exchange, Inc.*, 242 Or App 202, 208-09, 255 P3d 615 (2011) (citing *Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 384, 8 P3d 200 (2000), *adh'd to on recons*, 331 Or 595, 18 P3d 1096 (2001)). Defendants rely on authorities interpreting the declaratory judgment statute. Those authorities are inapposite here.

We have thus addressed each of the assignments of error related to the underlying civil judgment and have found no reversible error. We turn now to defendants' assignments of error addressed to post-trial proceedings.

### FIRST POST-TRIAL CONTEMPT JUDGMENT

The first assignment of error relates to the first post-trial contempt judgment. The trial judgment entered on September 30, 2021, included an injunction requiring, among other things, that defendants remove the obstruction from the culvert. Plaintiff filed the first post-trial contempt motion on November 9, 2021, alleging that defendants had failed to remove the obstruction. At the December 20, 2021, hearing on that motion, Fella admitted they had not removed the obstruction. She contended they were obligated

to keep the culvert blocked to protect other downhill properties. The court found Fella in contempt. The court did not find defendant Wytcherley in contempt, because it had heard no evidence about him. The order following that hearing directed that Fella "shall clear and unclog the culvert *** within 24 hours and shall not re-block the culvert, or otherwise interfere with the flow of water through the culvert from plaintiff's property to defendants' property."

On appeal, Fella contends she was statutorily entitled to be advised of her right to counsel before the contempt proceedings. She does not have a right to appointed counsel in these circumstances, but ORS 33.055(9) does require a court to advise an accused contemnor of the right to retain counsel "[i]f the defendant is not represented by counsel when coming before the court." When that notice is required, failure to provide it is reversible error. *See, e.g.*, *Vollstedt v. Jaap-Vollstedt*, 169 Or App 194, 195, 7 P3d 194 (2000) (reversing and remanding because the trial court did not notify the defendant of her right to be represented by counsel under ORS 33.055(9)). An error in failing to provide that advice generally must be reviewed as plain error. *See State v. V. B.*, 264 Or App 621, 624, 333 P3d 1100 (2014) (finding that the trial court's failure to advise appellant of "the information that the legislature deemed necessary to ensure a full and fair hearing" was plain error) (citing *State v. M. L. R.*, 256 Or App 566, 570-71, 303, P3d 954 (2013) (internal quotation marks omitted)); *see also State v. Allison,* 129 Or App 47, 50, 877 P2d 660 (1994) ("Whether or not appellant is represented by counsel, the court must inform appellant of the nature and possible outcome of the proceedings.").

Plaintiff explains, however, that this was not the first contempt motion in the case. In the pretrial phase, after defendants' first attorney withdrew, plaintiff sought contempt sanctions for defendants' failure to comply with an order compelling discovery. Defendants retained their second attorney at that time. Counsel filed a written response to the contempt motion and appeared on behalf of defendants at the hearing, where the pretrial contempt was dismissed.

In these circumstances, we agree with plaintiff that Fella knew of her right to counsel and knew how to

exercise it. She was aware that she could retain counsel, she had more than five weeks between the filing of the first post-trial contempt motion and the hearing, and she simply chose to appear *pro se*. Given those circumstances, even assuming that the court plainly erred in failing to advise defendants of their right to counsel, we decline to correct the error.

### THIRD POST-TRIAL CONTEMPT JUDGMENT

In the fifth and sixth assignments or error, Fella challenges the General Judgment and Money Award that followed a third post-trial contempt proceeding. Because the trial court's findings were made in a contempt proceeding, we "review the trial court's findings under the same standard that applies to our review of jury verdicts, which is a review for any evidence to support the findings." *Polygon Northwest v. NSP Development, Inc.*, 194 Or App 661, 670, 96 P3d 837 (2004).

For context, we begin with a review of the second post-trial contempt proceeding. By that time, the blockage in the culvert had been removed. Plaintiff alleged, however, that Fella had dug a pit at the mouth of the culvert and used the dirt from that pit to build an earthen dam above the level of the culvert. That created a reservoir that prevented the flow of water through the culvert. At a hearing on January 14, 2022, the trial court again found Fella in contempt. The subsequent order, signed February 22, 2022, elaborated that defendant Fella shall "clear and unclog the culvert \*\*\*, *shall remove any dam, barrier, reservoir or other structure preventing drainage*, and shall not otherwise interfere with the flow of water from Plaintiff's property to Defendant's property." (Emphasis added.) The court ordered fees and expenses, as well as a $3,500 fine.

Plaintiff filed the third contempt motion on March 1, 2022, and requested an expedited hearing. Plaintiff alleged that Fella still had not removed the earthen dam, so that it continued to block the flow of water through the culvert. A hearing was set for March 18, 2022. Fella appeared *pro se*, but she described conferral with a third attorney. The court continued the hearing to April 4, 2022, so that counsel might attempt to resolve the issue without further

litigation. At the April 4 setting, defendant Fella continued to appear *pro se*, and the parties reported no resolution.

At the hearing, plaintiff testified that after the March 18, 2022, continuance of the third contempt hearing, Fella moved some dirt in the vicinity of the culvert mouth, but that a 12-inch berm continued to restrict the flow of water through the culvert. He authenticated photographs showing the berm as recently as March 31, 2022. He testified that in past years, water used to run freely through the culvert and never pooled at the mouth. Defendant Fella testified that she dug only to try to clear the culvert and allow it to drain. She denied building a berm and claimed only to have planted a row of trees. She stated that water was flowing through the culvert and into her field that morning.

At the conclusion of that hearing, the court announced that Fella was once again in contempt. The court continued, "Clearly she is in contempt." Defendant Fella asked, "How is that?" and the court responded, "I don't know, Ms. Fella, I wish I had unlimited money like you apparently do so I could just pay contempt fines over and over and over again."

The court's letter opinion of April 12, 2022 similarly held Fella in contempt, reciting that prior orders had required her to "unblock the drainage pipe and refrain from re-blocking or otherwise interfering with the natural drainage of normal flood water from Plaintiff's property to Defendants' property." The court concluded that Fella has been "childish and petulant" rather than simply obeying the court's orders, and it ruled that plaintiff was entitled to $10,000 in damages, in addition to fees and expenses on the third post-trial contempt motion. The court ultimately entered a General Judgment and Money Award consistent with its letter opinion.

The fifth assignment of error contends that the third post-trial contempt judgment must be reversed because it is based on an invalid underlying trial judgment. As we have affirmed the trial judgment, this assignment of error is not well taken.

The sixth assignment of error also challenges the third post-trial contempt judgment, this time based on alleged defects in the third post-trial contempt proceedings.

Fella contends first that the trial court failed to make required findings of fact to support the contempt judgment. Plaintiff disputes whether that contention is preserved.

When the trial court announced its decision that Fella was in contempt, she inquired, "How is that?" In the plainest language, she sought an explanation of the basis for the contempt ruling. That constitutes a request for findings of fact. Particularly in the context of a *pro se* litigant, we find the error preserved.

A contempt judgment must be supported by "specific findings of fact, including a finding that the violation was willful." *Southworth and Southworth*, 113 Or App 607, 610, 835 P2d 122 (1991), *rev den*, 314 Or 574, 840 P2d 1296 (1992). We recognize it may be a fair inference that the trial court found Fella had willfully erected a 12-inch berm around the mouth of the culvert to impound water, contrary to the injunction requiring her to permit water to flow freely from the culvert. But in this context, the law requires an express finding of a willful violation of the court order. *See Cowles and Flormoe-Cowles*, 322 Or App 741, 744-45, 522 P3d 557 (2022) (explaining the relationship between *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968), and the requirement for a specific finding of willfulness and concluding that "[a] specific finding is one made by the court explicitly, not one that may be inferred."). Neither the court's comments from the bench nor the subsequent letter opinion and judgment provided such findings. We must therefore vacate the third post-trial contempt judgment and monetary award and remand for further proceedings.

The balance of Fella's arguments on the sixth assignment of error lack merit. The record does not support Fella's positions that the injunction is impermissibly vague, that the trial court demonstrated bias, or that the court imposed a sanction based on ability to pay.

ORDER GRANTING MOTION TO COMPEL DISCOVERY

Defendants' seventh assignment of error challenges the trial court's order granting plaintiff's motion to compel discovery. Defendants argue the motion should have been denied, because it lacked a certificate of conferral under UTCR 5.010.

The motion to compel was made during a pretrial period when defendants were unrepresented. Defendants failed to appear at the scheduled hearing. The court granted the motion, together with an award of fees and costs. The order compelling discovery was entered on March 11, 2021, and a limited judgment awarding fees and costs was entered on May 7, 2021.

Plaintiff then filed two pretrial motions for contempt, based on defendants' alleged failure to comply with the order compelling discovery. One contempt motion sought the remedy of default against both defendants, while the other sought monetary sanctions against defendant Wytcherley.

As discussed under the first assignment of error, at that point defendants retained counsel. In their response memorandum and at the contempt hearing on May 17, 2021, defense counsel argued that the motions for contempt should be denied because *the contempt motions* were not supported by certificates of conferral. The court agreed and denied the contempt motions.

At that hearing, defendants also sought to set aside the order compelling discovery. They did not argue that the order compelling discovery should be set aside because the *motion to compel* also lacked a required certificate of conferral. They sought to set aside the order compelling discovery only on the ground that they had no notice of the hearing and so no opportunity to be heard.

The court deferred consideration of that motion so it could review the notice provided to defendants. The motion to set aside was raised again at the end of closing arguments on the second day of trial (September 9, 2021). The court again deferred a final ruling on that issue. A further hearing was held on October 22, 2021. The court ultimately found that defendants had in fact received notice of the hearing on the motion to compel. Therefore, the court adhered to its order granting the motion to compel. On December 20, 2021, the court entered a Limited Judgment and Money Award, superseding the judgment of May 7, 2021.

Defendants claim they preserved the argument that the motion to compel should have been denied because it lacked a certificate of conferral. They contend that argument was raised at the hearing on May 17, 2021. As discussed above, they did not raise the issue *as to the motion to compel* at that hearing. At no time specified by defendants or that we have been able to identify did defendants object to the order compelling discovery on the ground that the conferral certificate was omitted *from that motion*. We find the claimed error unpreserved, and accordingly, it is not properly before us.

For the reasons discussed above, we vacate the General Judgment and Money Award in the third post-trial contempt (19CV40405F) and remand for further proceedings on that contempt; we otherwise affirm.

In Case No. 19CV40405F, vacated and remanded; otherwise affirmed.